UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANITA CHARITON,<br><br>Plaintiff,<br><br>v.<br><br>ETHICON, INC.; and JOHNSON & JOHNSON, INC.,<br><br>Defendant. | Case No. 2:13-cv-00364-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is defendants' motion to dismiss. The motion is fully briefed and at issue. For the reasons set forth below, the Court will grant the defendant's motion.

## BACKGROUND

Anita Chariton underwent surgery in 2007 to repair a hernia. The surgeon, Dr. Cher Ann Jacobsen, repaired the hernia by implanting a mesh product known as the Prolene Hernia System. It was manufactured by the defendant Ethicon, Inc. which is a wholly owned subsidiary of defendant Johnson & Johnson, Inc.[1] *Id.*

---

[1] To avoid confusion and for simplicity's sake, the Court will refer to the defendants collectively as "Ethicon."

Sometime after the surgery Chariton experienced abdominal pain and swelling, difficulty walking, and other discomfort. This continued for years, prompting Chariton to undergo an exploratory laparoscopy in June of 2011. During that procedure, Dr. John Pennings removed some of the old mesh and implanted new mesh. *Id.*

In September 2011, Chariton followed-up with Dr. Jacobsen to discuss the procedure performed in June 2011. Dr. Jacobsen told Chariton the mesh implanted in 2007 was defective and had caused her injuries. Because of these injuries Chariton seeks recovery in this suit.

Chariton filed her complaint on August 19, 2013, and, after amendment, her complaint now contains three counts: (1) strict liability for a manufacturing defect, (2) negligent failure to warn, and (3) negligent preparation of the product. *See Amended Complaint (Dkt. 9).* Ethicon argues that Chariton's complaint is time-barred by the two-year statute of limitations in Idaho Code, § 5-219(4).

## ANALYSIS

The parties agree that Chariton's claims are governed by a two-year statute of limitations contained in Idaho's Products Liability Reform Act, but disagree over when that period begins. The Act's limitation provision states that no action can be brought "more than two (2) years from the time the cause of action accrued as defined in Idaho Code § 5-219." Under § 5-219(4), the cause of action accrues at "the time of the occurrence, act or omission complained of" unless it is based upon (1) leaving a foreign object in a patient's body, or (2) a claim that the damage was fraudulently concealed from

the patient.  If either of these two exceptions applies, the cause of action only accrues once the plaintiff "knows or in the exercise of reasonable care should have been put on inquiry" of the injury.  *See* I.C. § 5-219(4).

Assuming that neither exception applies, the two-year period begins on the date of "the occurrence, act or omission complained of," according to the statute.  This language has been interpreted by the Idaho Supreme Court to require that there be "some damage" to the patient that is "objectively ascertainable."  *Stuard v. Jorgenson,* 249 F.3d 1156, 1160 (Id.Sup.Ct. 2011).

The Idaho Supreme Court put this gloss on the statutory language – that is, interpreted the language "flexibly" – in an attempt to "avoid absurd results."  *Davis v. Moran,* 735 P.2d 1014, 1019 (Id.Sup.Ct. 1987).  In that case, a patient claimed that her spinal cord was damaged when it was exposed to an excessive dose of radiation. Although she filed suit more than two years after the radiation treatment, her suit was within two years of the date her doctors discovered that the treatment caused her spine problems.  *Id.* at 1016.  She submitted evidence that damage from radiation treatment is often not immediately detectable and might not arise until years after the treatment.  *Id.*

If the statutory language was read strictly, the date of the radiation treatment would be "the time of the . . . act . . . complained of," and the patient's claim would be time-barred.  But that would be an "absurd" result if there was no actual damage until long after the treatment, as some evidence suggested.  At the same time, the court could not ignore the statutory intent to limit the discovery exception to two narrow instances,

neither of which applied. Accordingly, the Court, interpreting the statutory language "flexibly," held that the limitations period would not begin until the "fact of injury becomes objectively ascertainable." *Id.* at 709. Because there were questions of fact on that issue, the court remanded the case for further fact-finding. *Id.*

As another example, when a patient complained about exposure to asbestos that did not cause an objectively ascertainable injury to his lungs until years later, the limitations period did not begin to run until that later date. *Brennan v. Owens-Corning Fiberglas Corp.,* 10 P.3d 749 (Id.Sup.Ct. 2000). While these cases soften one of the statute's sharp edges, they leave untouched another: When detectable damage occurs without symptoms, the limitations clock begins to tick silently, and the deadline could expire quietly before the plaintiff is even aware that he has been wronged.

That was precisely what happened in *Stuard v. Jorgenson*, 249 P.3d 1156, 1160-1161 (2011). There, a spine surgeon operated on the wrong section of a patient's spine, removing healthy tissue and placing a supporting plate in the wrong area. The patient had no way of knowing about this malpractice until more than two years later when a nurse discovered it on an x-ray image. *Id.* at 1158. The court held that the limitations period started on the date of the surgery because there was an objectively ascertainable injury – the surgeon had removed healthy tissue and installed the plate in the wrong area. *Id.* at 1160.

Neither of the two statutory discovery exceptions applied. Rejecting the patient's plea to expand the exceptions because he had no way of learning about the malpractice

until long after the surgery, the court recognized that the result was "indeed harsh," but advised the patient that "his arguments are better to be taken up with the legislature in the adoption of a discovery rule for all medical malpractice claims." *Id.* at 707.

Turning to the present case, Chariton argues that the limitations period did not begin until September 2011, the date she discovered from Dr. Jacobsen that the mesh was defective and caused her injuries. She is entitled to a discovery exception if the damage was fraudulently concealed from her. In that event, she must file suit within one year following the discovery of the damage. *See* I.C. § 5-219(4). She did not file suit until August 19, 2013, more than one year after the discovery date in September of 2011. Thus, the discovery exception does not help Chariton, and her lawsuit is timely only if an objectively ascertainable injury did not manifest itself until August 19, 2011, or later.

The establishment of this date is a factual matter under *Davis* that typically cannot be resolved on a motion to dismiss but must await summary judgment proceedings or trial. However, dismissal may be appropriate when the plaintiff has included sufficient allegations in her complaint that the date can be identified with precision. *See Weisbuch v. County of L.A.,* 119 F.3d 778, 783 n. 1 (9th Cir. 1997) (affirming dismissal under Rule 12(b)(6) based on allegations by plaintiff in complaint – a "plaintiff may plead herself out of court").

In this case, plaintiff alleged in her amended complaint that she (1) "presented to Kootenai Medical Center . . . on June 11, 2011, with severe abdominal pain" and (2) that Dr. Pennings' surgery on that date removed "old mesh product (which had disintegrated

and protruded in other parts of plaintiff's abdomen) . . . ." *See Amended Complaint (Dkt. No. 9)* at ¶11. This disintegration and protrusion of the mesh product is the damage that Chariton is suing for in this lawsuit. By her own allegations, this damage was objectively ascertained on June 11, 2011, the date of her surgery. While no one told her that the mesh was defective until September of 2011, the clock was ticking as of June 11, 2011. Her lawsuit filed August 19, 2013, is therefore time-barred. This is "indeed harsh" but is the result compelled by *Stuard* and the Idaho Legislature.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (docket no. 11) is GRANTED. The Court will enter a separate Judgment dismissing Plaintiff's Complaint as required by Rule 58(a).

IT IS FURTHER ORDERED that Defendants' Motion to Strike (docket no. 19) is DEEMED MOOT.

DATED: April 29, 2014

B. Lynn Winmill
Chief Judge
United States District Court